## Wygal v. Georgia Home Insurance Company.

(Decided June 4, 1912.)

### Appeal from Allen Circuit Court.

1. Fire Insurance Policy—Cancellation and Surrender.—Where the insurer, through its agent, and the insured agree to the surrender and cancellation of her policy upon reinsurance in another company, liability under said policy terminates upon the deposit, by the insured, of the policy in the mails, accompanied with notice that the insured did not desire a renewal of her insurance in another company.

2. Trial—Peremptory Instructions.—Where from the evidence, it is undisputed that the insured, before the loss, mailed said policy to the agent of the insurer, with check for premium earned to that date and notice of her desire not to reinsure; and that she herself had procured other insurance on the same property, equal in amount to that in the policy surrendered, the only reasonable conclusion is that the insured intended to surrender her policy for cancellation, and the court was authorized to direct a verdict for the insurer.

GOAD & OLIVER for appellant.

BATES, HARDING, EDGERTON & BATES, THURMAN B. DIXON and J. H. GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Georgia Home Insurance Company, of Columbus, Ga., through its agents, Dickinson & Trigg, of Glasgow, Ky., issued to A. B. Wygal two policies of insurance; one for $2,000 upon her dwelling house in Scottsville, Ky., and the other, for $50, on household furniture located therein. On February 10, 1911, the said company, through one of its agents, called upon the insured for the purpose of taking up and canceling said policies. He told her that his company was retiring from business in that part of Kentucky and desired to have its policies canceled, and requested of her that she turn over to him the policies for cancellation, stating that he would place her insurance in some other company for her. The policies were delivered to him, but later in the day, the insured called upon him and said that she did not want to be unprotected against loss by fire, and requested him to return the policies to her in order that she might keep them until they were replaced by others.

This was satisfactory to the agent, and the policies were returned to her with the undesrtanding that others were to be issued and sent to her, by mail, to take their places, and upon receipt of these other policies, the two policies in the Georgia Home were to be forwarded to the agent. Upon the same day, some hours after this conversation, the assured went to an insurance agent in Scottsville, named Gardiner, who represented the Home Insurance Company of New York, and told him that the policies that she had been carrying in the Georgia Home had been canceled and requested him to issue to her policies in his company to take the place of those taken up by the Georgia Home. In compliance with her request, he issued to her a policy covering the identical dwelling and furniture, which had been insured in the Georgia Home, for the same amount she had been carrying in the Georgia Home, to-wit: $2,050. This policy became effective at noon February 10, 1911. On the morning of the next day, between nine and ten o'clock, this property was destroyed by fire. The Georgia Home Insurance Company declined to pay upon the ground that its policies had been canceled, and the Home of New York declined to pay on the ground that its policy had been procured through fraudulent misrepresentations. The insured thereupon instituted suit against each company to enforce payment.

The facts, as stated, were pleaded by the Georgia Home as a defense to plaintiff's right to recover anything against it. The Home of New York pleaded that its policy was issued under the express agreement that there was no other or additional insurance upon the property, and that the fact that other insurance was carried by the plaintiff, without its consent, had the effect to avoid its policy. When these cases came on for trial, the trial judge, evidently being of the opinion that a determination of the question raised in one suit must necessarily determine the rights of the parties in the other, consolidated the two cases and heard them together. At the conclusion of the evidence, he gave a peremptory instruction to the jury to find for the defendant, Georgia Home Insurance Company, and to find against the Home of New York the full amount called for in its policy, $2,050. The plaintiff prosecutes this appeal from the judgment entered upon the verdict returned under the direction of the court in favor of the

Georgia Home. The Home of New York paid the judgment against it.

The only question presented for determination is: Did appellant, in fact, surrender for cancellation her policies in appellee company, before the fire and consequent loss?

The undisputed evidence is: That Mr. Dickinson, as agent of the appellee company, went to Scottsville to take up these policies, notifying appellant of the purpose of his visit, and she consented to their cancellation, but requested that she be permitted to keep them until her property was insured in some other company; that on the same day she procured insurance in another company; and that on the morning of the day following she mailed the policies to Mr. Dickinson at Glasgow, enclosing with them a check for the premiums which had accrued up to that time. It appears that when the policies were issued the premiums were not paid. At the same time she wrote the agents that she had decided not to have the policies replaced, evidently meaning that she had decided not to have them replaced by their agency, for at that time she had already had them replaced by a policy in the Home of New York. She did not mail these policies to the agents of appellee until she had procured other insurance. As she only requested that she be permitted to retain them until she had procured other insurance, when she placed them in the mail, directed to the agents of appellee, some three or four hours before the fire occurred, she evidently did so for the purpose of surrendering them for cancellation.

Unless the placing of these policies in the mails addressed to the agent of appellee, according to instructions and pursuant to the understanding which she had with him, was not a surrender of same by her and delivery, through its agents, to appellee, her right to recover under these policies ceased before any loss was sustained. The evidence clearly shows that the policy was taken out in the Home of New York for the express purpose of replacing the insurance carried in appellee company, and when this evidence is considered in connection with the letter of appellant, which accompanied the policies when she mailed them to appellee's agents, the conclusion is irresistible that appellant knew and understood that the contract of insurance in appellee company, as evidenced by these policies, was terminated, and all her rights thereunder had ceased. Her right to further

protection under these policies was as fully terminated when she placed them in the mails accompanied by her check for the earned premiums thereon, together with her letter stating that she did not desire them renewed by appellee's agents, as they would have been had she closed the matter with appellee's agent, when he called upon her for them and permitted him to take the policies with them. The placing of them in the mails addressed to him, under the agreement which she had made, was a surrender of them to the company. 9 Cyc., 295.

In Ohio Farmers Ins. Co. v. Hunter, 38 Ind., App. 11, a similar question was before the court. It was there held that, where the insured had mailed a policy to the company on March 13th, accompanied by a letter requesting that the note given for the premium be returned to her, and the property was destroyed by fire on the 18th of March, no recovery could be had, because it was apparent from the statement in the letter, that the policy was surrendered for the purpose of cancellation. The court said that the rights of the parties, when the policy was returned, would be determined by their intention, and that as it was clear that the policy was returned for the purpose of having it canceled, the insurance company was not liable for the loss occurring after the policy had been mailed by the insured to it. Measured by that standard, appellant was not entitled to recover anything, for, there can be no doubt that she intended, when she mailed these policies to have them canceled.

A similar question arose in Aetna Insurance Co. v. Robards Tobacco Company's Trustee, 109 S. W., 1185, 33 Rep., 257. There, the policies had been surrendered by the insured, and the inquiry was "with what intent they had been surrendered." The insured claimed that they had been returned to the company's agent simply for the purpose of securing a lower premium rate. In disposing of the question, this court said:

"As before stated, the issue narrows down to the single question whether or not the policy was surrendered by Robards for the purpose of cancellation. Upon this point, after a careful consideration of the facts and briefs of counsel, our conclusion is that the evidence of Robards is conclusive that the policy was surrendered with the intention that it should be at once canceled. The letter of March 5th, the fact that Robards had exhausted every effort to obtain a reduction of the rate below $3.37, but had failed, the refusal to pay the pre-

mium charged, and the payment of the amount of premium from the date of issual to the date of surrender —make this purpose and intention on the part of Robards plain. And that the agents of the company accepted the policy with the belief and understanding that it was canceled is not open to question. The theory of Robards that he surrendered these policies with the expectation that the company would yield to his importunities and reduce the rate is flatly contradicted by the facts brought out in the testimony.''

The similarity between that case and the case at bar is striking. The trial judge was no doubt, influenced in sustaining the motion for a peremptory instruction in favor of appellee, by the reasoning of this court in that opinion. Here, although appellant states that the policies were mailed to appellee's agents to be canceled when she received from them other insurance in their place, her letter in which she states, ''we after consideration have decided not to have them replaced now'' shows that at that time she was not expecting to have other policies returned to her by appellee's agent, in lieu of those which she was surrendering; nor is her statement in harmony with her conduct in sending to appellee's agents her check for the amount of premiums earned on said policies, from the date of their issue to February 10th at noon, when the policy issued to her by the Home of New York became effective. Upon this evidence, the trial judge was amply justified in directing a verdict for appellee.

Objection is raised that the court erred in consolidating these two suits. We deem it only necessary to state that the questions raised in the one case were so interwoven and connected with the other, that they could properly be heard at the same time, and the court did not err in so holding.

Upon full consideration of the record, we are convinced that there is no merit in appellant's claim; and, upon the state of facts presented, she was not entitled to recover anything.

Judgment affirmed.